**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**JEFFREY S. GARRISON, II,**

     **Plaintiff,**

**vs.**                         **Case No.  1:17cv77-MW/CAS**

**NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

     This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act.  After consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On February 4, 2012, Plaintiff, Jeffrey S. Garrison, II, filed an application for SSI alleging disability beginning January 2, 2008, based on bipolar and anxiety disorder, not otherwise specified (NOS) ADHD; oppositional defiat [sic] disorder; paranoid tendencies; physchophrentic [sic] tendencies; and anxiety disorder.  Tr. 24, 173, 202, 206, 243.[1]

Plaintiff's applications were denied initially on February 15, 2013, and upon reconsideration on July 19, 2013.  Tr. 24, 76, 89.  On August 16, 2013, Plaintiff requested a hearing.  Tr. 24, 37-65, 106.  On March 17, 2014, Plaintiff's counsel requested an on the record decision, which was denied on April 14, 2014.  Tr. 116-25.

On March 6, 2015, Administrative Law Judge (ALJ) M. Hart held a video hearing in which Plaintiff appeared and testified in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida.  Tr. 24, 37-65.  Ted D. Mitchell, an impartial vocational expert, testified during the hearing.  Tr. 24, 60-64, 163 (Resume), 258 (past work summary).  Elizabeth F. Stakenborg, an attorney, represented Plaintiff.

---

[1]  Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

Tr. 24, 90-92, 133-34.  Archie Blair, a paralegal and co-representative from the same law firm of Sims and Stakenborg, represented Plaintiff at the hearing.  Tr. 37, 39, 172.

On May 16, 2015, the ALJ entered a decision and denied Plaintiff's application for benefits concluding that Plaintiff has not been under a disability since February 4, 2012, the date the application was filed.  Tr. 24-32.

On July 9, 2015, Plaintiff requested review of the ALJ's decision. Tr. 9.  On July 31, 2015, the Appeals Council granted Plaintiff more time to submit "more evidence or a statement about the facts and the law in this case."  Tr. 12.  On November 18, 2016, the Appeals Council granted Plaintiff's current counsel additional time to provide additional information. Tr. 5.  On January 19, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision making it the final decision of the Commissioner.  Tr. 1-3.  *See* 20 C.F.R. § 416.1481.

On March 17, 2017, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 18-19, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity [SGA] since February 4, 2012, the application date." Tr. 26.

2. "The claimant has the following severe impairments: history of bipolar disorder, not otherwise specified; ADD/ADHD; and bipolar affective disorder." Tr. 26. The ALJ considered Plaintiff's history of obstructive sleep apnea "for which there is no evidence of significant ongoing treatment" and, therefore, was a non-severe impairment. *Id.* The ALJ also considered Plaintiff's obesity "in limiting him to occupations where he can avoid concentrated exposure to unprotected heights and the use of moving machinery pursuant to SSR 96-8p. However, noting the claimant's activities of daily living, treatment records and course of treatment for his impairments, as discussed in further detail in Section 4 below, no further restrictions have been found to be warranted." *Id.* (The ALJ noted at step 3 below that Plaintiff "is obese and the effect that this condition has on the claimant's overall ability to perform work related functions, singly and in combination with his other impairments, has been considered in accordance with SSR 02-1p and SSR 96-8p." Tr. 27.)

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 26. The ALJ considered the "paragraph B" and "paragraph C" criteria. Tr. 27. Considering Plaintiff's mental impairments, the ALJ reviewed these criteria considering Listings 12.02, 12.04, and 12.06 finding them not applicable. *Id.* The ALJ determined that Plaintiff had *mild* restriction in activities of daily living; *moderate* difficulties in social functioning and concerning concentration, persistence, or pace; and *no* episodes of decompensation of extended duration. *Id.* The ALJ specifically stated that the "paragraph B" criteria are not a residual functional capacity [RFC] assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.

*Id.* The ALJ also noted that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment. *Id.*

4. "[T]he claimant has the [RFC] to perform at all exertional levels but with the following nonexertional limitations: he must avoid concentrated use of moving machinery and must avoid concentrated exposure to unprotected heights. Additionally, work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work[-]related decisions and routine workplace changes. The claimant is further limited to only occasional interaction with the public, occasional interaction with co-workers, and occasional supervision." Tr. 28; *see* Tr. 61-62 (hypothetical posed to vocational expert).

5. "The claimant is capable of performing past relevant work in building maintenance, both as generally and actually performed. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." Tr. 31. The vocational expert testified that Plaintiff's past relevant work is classified in the <u>Dictionary of Occupational Titles</u> (DOT) as building maintenance, DOT # 381.687-014, heavy exertion, and unskilled with an SVP of 2.[2] *Id.*; *see* Tr. 60-61.

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). A Specific Vocational Preparation (SVP) of 1 means "short demonstration only." <u>Dictionary of Occupational Titles</u> (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. Social Security Ruling (SSR) 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). "Heavy work

6. In the alternative, the ALJ proceeded to step 5 and determined "considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant also can perform." Tr. 31. The ALJ considered this issue in conjunction with the Medical-Vocational Guidelines (the Grids). The ALJ noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by nonexertional limitations," and, "[t]o determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels," the ALJ asked "the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." Tr. 32. The vocational expert testified that such an individual could perform several representative occupations including *marker* and *housekeeping cleaner*, light exertion, with an SVP of 2, and *floor waxer*, medium exertion, also with an SVP of 2. *Id.*; Tr. 62-63; *see supra* at n.2.

7. "The claimant has not been under a disability, as defined in the Social Security Act, since February 4, 2012, the date the application was filed." Tr. 32.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person

---

involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 416.967(d).

would accept as adequate to support a conclusion." <u>Bloodsworth v.</u>

<u>Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord*

<u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005). "The

Commissioner's factual findings are conclusive if supported by substantial

evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002)

(citations omitted).[3]

"In making an initial determination of disability, the examiner must

consider four factors: '(1) objective medical facts or clinical findings; (2)

diagnosis of examining physicians; (3) subjective evidence of pain and

disability as testified to by the claimant and corroborated by [other

observers, including family members], and (4) the claimant's age,

education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations

omitted). A disability is defined as a physical or mental impairment of such

severity that the claimant is not only unable to do past relevant work, "but

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 416.905(a), 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002).

Pursuant to 20 C.F.R. § 416.920(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

---

[4] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 416.945(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* Although an ALJ considers

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

---

medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered her decision.  *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

experience.  <u>Phillips</u>, 357 F.3d at 1237; <u>Jones v. Apfel</u>, 190 F.3d 1224,

1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at 131; <u>MacGregor v. Bowen</u>, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.1520(a)(4)(v).  If the

Commissioner carries this burden, the claimant must prove that he or she

cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>,

831 F.2d 1007, 1011 (11th Cir. 1987).

As the finder of fact, the ALJ is charged with the duty to evaluate all

of the medical opinions of the record resolving conflicts that might appear.

20 C.F.R. § 416.927.[5]  When considering medical opinions, the following

factors apply for determining the weight to give to any medical opinion: (1)

the frequency of examination and the length, nature, extent of the treatment

relationship; (2) the evidence in support of the opinion, such as "[t]he more

a medical source presents relevant evidence to support an opinion,

particularly medical signs and laboratory findings, the more weight" that

opinion is given; (3) the opinion's consistency with the record as a whole;

(4) whether the opinion is from a specialist and, if it is, it will be accorded

greater weight; and (5) other relevant but unspecified factors.  20 C.F.R.

§ 416.927(b) & (c).

---

[5]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

A claimant bears the burden of proving he or she is disabled, and consequently, is responsible for producing evidence in support of the claim. *See* 20 C.F.R. § 416.912(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's consideration of the evidence, including the medical opinions, and the determinations at step 4 that Plaintiff can perform previous work and at step 5 of the sequential evaluation process that Plaintiff has the RFC to perform work in the national economy.**

### A.

Plaintiff argues that the ALJ should have found him disabled at step 5 of the sequential evaluation process

> because it is entirely credible that as a direct and proximate result of his well-documented lifetime of mental illness which includes the continuing expression of anger and physical aggression approximately twice a month it should have been clear to the ALJ that he cannot possibly be present and function in the workplace eight (8) hours a day five (5) days a week, for an entire month, without decompensation.  It should have been obvious to the Defendant Commissioner that Plaintiff Garrison is only able to give the appearance of more or less normal functioning because he experiences no stress in his life; as everything is taking [sic] care of for him by his mother.

ECF No. 18 at 35.  According to Plaintiff, the record supports only one conclusion and that is he is not "able to function in a normal manner, with regard to absenteeism and tardiness, day in and day out."  *Id.* at 37.

Plaintiff also argues the ALJ erred at step 4.  *Id.*

Case No. 1:17cv77-MW/CAS

## B.

The ALJ begins a discussion of Plaintiff's RFC with Plaintiff's allegations (hearing testimony) that he is disabled "for limitations resulting from his impairments."  Tr. 28.  Plaintiff is 23 years old as of the hearing, stands 6 feet 4 inches tall, and weighs 350 pounds.  He completed the 12th grade and earned a special diploma."  *Id.*; Tr. 40, 54, 59.  Plaintiff described his living arrangements with his mother and brother and the reasons he cannot work, including having trouble waking up on time and being sleepy during the day.  Tr. 28; Tr. 43.  He has difficulty following orders and finishing things, and has problems being around people he does not know.  He is fearful of getting attacked if he is not with people he knows.  *Id.*; Tr. 42-44.  He says he "cannot work because finishing a task is a hassle which makes him want to quit doing the task altogether.  Tr. 28; Tr. 53.  "He takes medication which he indicated does not help him as much as he feels it should."  Tr. 28.  He continues to hear voices "[o]nce in a while . . . but not all the time," "couple of times a week," and receives therapy a couple of times a year.  *Id.;* Tr. 45-46, 55.

The ALJ summarized Plaintiff's reported daily activities, including spending time at the park playing baseball and basketball with family and friends.  Tr. 28-30; Tr. 50-53.

Case No. 1:17cv77-MW/CAS

C.

The ALJ noted that there were records that predate the filing of the application of February 4, 2012, "which are considered for longitudinal history purposes. Subsequent medical records show overall stabilization of the claimant's symptoms and good activities of daily living with fair to good compliance with treatment (portions of 4F-Exhibits 11F)." Tr. 29. Portions of Exhibits 4F through 11F are treatment records from Sarkis Family Psychiatry (Sarkis) covering the time prior to the application filing date of February 4, 2012. *See* Tr. 319-58, 363-93.

D.

Sarkis Family Psychiatry

The ALJ reviewed the medical evidence of record starting with patient records from Sarkis beginning November 8, 2012. Tr. 29; 347-48.[6] As of November 8, 2012, Plaintiff reported his medication made him sleepy, asleep by 8:30 p.m. and arising at midnight. He had no job and was not in school. Tr. 347. He was instructed to continue his medication and take the later dose at 9:00 p.m. Tr. 29, 348. Records indicate Plaintiff's ability to sleep some at night despite his reported fears of being alone at night.

---

[6] According to Sarkis patient records, it appears Plaintiff was evaluated and treated at Sarkis beginning on or about May 1, 2009, Tr. 345-46, although Nurse Noffsinger mentions contact since March 23, 2006. Tr. 355; *see* Section C.

Tr. 29; *see* Tr. 363 (Oct. 9, 2013), Tr. 376 (Nov. 18, 2014).

A February 14, 2013, note indicates he was working occasionally at the apartment complex for his mother, although he loses motivation for unspecified reasons. He completed his SSI application online and talked with an attorney about his claim. Tr. 29, 351. On September 3, 2013, Plaintiff reported going on vacation out-of-state (Virginia), which "went well." Tr. 29, 365. He was prescribed several medications, including Lamictal. He "was not taking meds regularly, isolating self but starting to pull out of depression." His grandparents came to stay with him for a while. Tr. 365.

On March 6, 2014, treatment records noted Plaintiff had no big rage outbursts and no little ones either; he would also go for walks and try to stay out of drama. Tr. 30, 381-82. As of November 18, 2014, Plaintiff was taking three medications, including Prozac daily. Tr. 325.

Nurse Noffsinger

On March 19, 2013, Kathy Noffsinger, ARNP, from Sarkis, filled out a Residual Mental Capacity Assessment form and indicated that Plaintiff has Bipolar Affective Disorder, Type I and ADHD, Combined.[7] Tr. 29, 355-58.

---

[7] Although several of the patient notes are co-signed by Nurse Noffsinger and a physician (the name is not legible, *see, e.g.*, Tr. 334, 336, 338, 340, 342, 344, 346), most of these notes are signed only by Nurse Noffsinger, especially the notes from approximately 2012 through 2014. *See, e.g.,* Tr. 324-32, 348, 351-54, 363-70, 375-91.

The ALJ considered Nurse Noffsinger as a non-acceptable medical source, although her opinions were considered regarding the *severity* of Plaintiff's impairments.  Tr. 29.  Nurse Noffsinger noted, in part, that Plaintiff's ability to perform work-related activities on a day-to-day basis in a regular setting was "extreme," which precluded performance for more than 20% of an eight-hour workday.  Tr. 356-57.  Nurse Noffsinger opined that Plaintiff has moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in concentration, persistence, or pace, and indicated he had three episodes of decompensation.  *Id.*; Tr. 358.  She further opined that Plaintiff would miss more than five days a week per month and that these limitations have been in effect since Plaintiff's birth.  *Id.*

On December 10, 2013, Nurse Noffsinger completed another Residual Mental Capacity Assessment with greater limitations, including marked functional limitations regarding difficulties in maintaining social functioning and episodes of deterioration or decompensation.  Tr. 30; 371-74.

In a letter dated February 18, 2015, Nurse Noffsinger noted that Plaintiff has been diagnosed with Bipolar Affective Disorder, Type I; ADHD,

combined type; and anxiety disorder. She opined that Plaintiff "is a worthy

candidate for Social Security disability benefits." Tr. 30 (citation omitted);

Tr. 393. She also noted that Plaintiff's current medication regimen includes

Abilify, Trileptal, and Prozac. Tr. 393.

The ALJ gave limited weight to Nurse Noffsinger's evaluations and

stated:

> Limited weight is given to Exhibits 6F [Tr. 349-58], 9F [Tr. 371-74], and 11F [Tr. 393] by Ms. Noffsinger as the limitations issued are not supported by the conservative course of treatment that the claimant has received or by the relatively active lifestyle that the claimant has reported. While treatment notes reveal improvement in the claimant's condition, Ms. Noffsinger's medical source forms conversely indicate a decline. However, the claimant's activities of daily living and noted occasional work activity at his mother's apartment complex do not establish consistently severe and work preclusive symptoms since the application date. While the claimant may be impulsive with money, such a factor would not preclude the claimant from performing all work activity. Even with fair to good compliance with recommended treatment, no more than moderate limitations are established. Moreover, the issue of disability is one that is reserved for the Commissioner.

Tr. 30.

Nurse Noffsinger is not an acceptable medical source such as a

licensed physician or licensed or certified psychologist or the like.

20 C.F.R. § 416.913(a)(1)-(2). Rather, nurse-practitioners, like Nurse

Noffsinger, are considered *other* medical sources. 20 C.F.R.

§ 416.913(d)(1). "Accordingly, a nurse practitioner's opinion is not entitled to the same weight as afforded the opinion of a treating psychiatrist or psychologist. Cf. <u>Falge v. Apfel</u>, 150 F.3d 1320, 1324 (11th Cir. 1998)." <u>Osterhoudt v. Astrue</u>, No. 8:10-CV-336-T-TGW, 2011 U.S. Dist. LEXIS 5781, at *7 (M.D. Fla. Jan. 14, 2011).

In addition to evidence from listed acceptable medical sources, as noted by the ALJ, Tr. 29, the Commissioner "may also use evidence from other sources [such as a nurse practitioner] to show the *severity* of [a claimant's] impairment(s) and how it affects [their] ability to work." 20 C.F.R. § 416.913(d) (emphasis added). Further, the opinion is afforded weight to the extent that it is supported by the factors listed in 20 C.F.R. § 416.927(d), including the treatment provided, the extent of the examinations and testing performed, the consistency with the other evidence, and the degree of explanation provided with the opinion. *See* SSR 06-3p, 2006 SSR LEXIS 5, at *5-7 (Aug. 9, 2006) (rescinded eff. Mar. 27, 2017).

The ALJ explained the reasons for giving Nurse Noffsinger's opinions little weight. Tr. 29-30. Substantial evidence supports the ALJ's consideration of Nurse Noffsinger's opinions.

E.

William E. Beaty, Ph.D.

On May 18, 2013, Plaintiff presented for a mental consultative

examination with Dr. Beaty.  Tr. 29.  The ALJ summarized Dr. Beaty's

evaluation as follows:

> The claimant presented for mental consultative examination on May 18, 2013 with Dr. William Beaty.  The claimant reported he is currently an assistant coach in baseball for a group of 10-year olds and is doing well getting to practices and games and carrying out his role.  The claimant reported improvement in his temper from times past and that he has outbursts now just twice a month when he gets angry when his mother does not let him do what he wants to do.  He does control his anger well while serving in his role as an assistant baseball coach.  The claimant reported significant activities of daily living including calling his father, playing video games, doing the dishes, hanging up clothes, visiting with friends, partaking in his baseball activities five days a week, driving a car or taking the bus, and shopping in stores though is impulsive with money.  Dr. Beaty diagnosed ADHD and bipolar disorder, not otherwise specified and issued a GAF score of 60,[8] indicating moderate symptoms (Exhibit

---

[8]  The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the scale that is primarily used by mental health practitioners.  The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34.  The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale.  *Id. See* Nichols v. Astrue, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at *26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale).  A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning.  DSM-IV-TR 34.  A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*  The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'"  Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir.

7F).   Great weight is given to this opinion as Dr. Beaty examined the claimant and issued an unbiased opinion and GAF score that is consistent with stabilized symptoms, his noted activities of daily living, and occasional work activity as indicated in the treatment records.

Tr. 29-30; Tr. 360-62.

In addition to the ALJ's summary from Dr. Beaty's evaluation, the results of Dr. Beaty's mental exam indicates that Plaintiff's mood was normal and affect appropriate; his orientation was okay as to person, place, time, date and reason for his coming to the evaluation; his speech was normal, thought processes were intact and organized, no delusions or paranoia were exhibited and otherwise appropriate to topics discussed; his attention impairment was normal for the most part; he was responsive verbally, alert, and had fair insight and extractive ability with estimated average cognitive ability; his memory was not impaired and no hallucinations and perceptual disturbances were observed, although he had a history of auditory and visual hallucinations and ADHD behaviors; he

---

2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).  In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (5th ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice.  In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures")."  DSM-5 at 16; *see* Finley v. Colvin, No. 3:12-7908, 2013 WL 6384355, at *23 n.9 (S.D. W.Va. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

had no history of homicidal or suicidal ideation and none was elicited; he was pleasant, cooperative, had good eye contact, responded to questions and spontaneously elaborated many answers.  Tr. 361-62.  His prognosis was guarded and he cannot manage his own funds.  Tr. 362.

Substantial evidence supports the ALJ's determination to give "great weight" to Dr. Beaty's opinion.  Tr. 29-30.

State Agency Consultants

The ALJ gave great weight to the opinions of State agency medical (psychological) consultants, James Levasseur, Ph.D., and Jessica Anderton, Psy.D.  Tr. 30; Tr. 69-75 (May 21, 2013); Tr. 81-88 (July 19, 2013); *see* 20 C.F.R. § 416.927(e)(2)(i)-(iii); SSR 96-6p, 1996 SSR LEXIS 3 (July 2, 1996) (rescinded and replaced by SSR 17-2p, eff Mar. 27, 2017).

The ALJ noted these psychologists opined that Plaintiff's organic mental and affective disorders resulted in *mild* restriction of activities of daily living, *moderate* difficulties in maintaining social functioning, *moderate* difficulties in maintaining concentration, persistence, or pace, and *no* repeated episodes of decompensation, each of extended duration.  Tr. 30; Tr. 72-74, 84-96; *see infra* at n.11.

An ALJ can assign great weight to State agency physician opinions where the expert opinions are supported by and consistent with the record

as a whole.  Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 850-51

(11th Cir. 2006) (unpublished); 20 C.F.R. § 416.927(e)(2)(i) (explaining that

State agency medical and psychological consultants are highly qualified

physicians, psychologists, and other medical specialists who are also

experts in Social Security disability evaluations).  The opinions of these

psychologists provide substantial evidence to support the ALJ's RFC

determination.  No error has been shown.

## F.

### The ALJ's credibility determination

The ALJ analyzed Plaintiff's hearing testimony and the medical

evidence, including the consultative evaluations.  Tr. 28-30.  The ALJ

concluded the RFC assessment:

> In assessing the claimant's credibility, he reported a wide array of
> daily activities that can be rather demanding and are not the type
> expected from a totally disabled individual.  The claimant leads a
> fairly active life and partakes in several age-appropriate activities.
> The record also notes some work activity and volunteer coaching
> after the alleged onset date that was not mentioned by the claimant
> or his representative at the hearing and is not inconsistent with the
> ability to perform medium work.  Loss of work motivation is
> mentioned in the treating records, but not for 12 continuous months,
> and no disabling factors are established as the specific cause.
> Thus, this non-recurrent notation indicating motivational challenges
> does not establish an inability to work that is both secondary to
> severe impairments and at a disabling level for 12 continuous
> months.

> Furthermore, the claimant's symptoms have positively responded
> to the treatment that the claimant has received, which has consisted
> of medication and counseling.  In sum, the medical evidence of
> record, activities of daily living, and course of treatment with fair to
> good compliance all establish an ability to perform work at SGA
> levels.

Tr. 30-31.

Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced as not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." Carter v. Comm'r of Soc. Sec., 411 F. App'x 295 (11th Cir. 2011) (unpublished) (citing Wilson v. Barnhart, 284 F.3d 1219, 1226 (11th Cir. 2002).  The ALJ adequately set forth a reasoned rationale with specific record citations that supports the credibility findings.

### G.

At step 4, after consulting with the vocational expert, the ALJ determined that Plaintiff can perform past relevant work in building maintenance, both as generally and actually performed.  Tr. 31; Tr. 61-62.  Plaintiff briefly argues the ALJ erred when making this determination. According to Plaintiff, the ALJ should have included his ratings from the four functional areas found in the Psychiatric Review Technique (PRT). ECF No. 18 at 36-37.

In applying the special technique, an ALJ must first determine whether a claimant has a "medically determinable mental impairment." *See* 20 C.F.R. § 416.920a(b); *see also* 20 C.F.R § 416.908.  If such an impairment exists, the ALJ must then complete a PRT and append it to the decision or incorporate its mode of analysis into the findings and conclusions.  Moore v. Barnhart, 405 F.3d at 1213-14.  More specifically, an ALJ is required to evaluate "how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.'" *Id.* at 1213 (citation omitted).  "The ALJ is required to incorporate the results of this technique into the findings and conclusions."  *Id.* (citation omitted); see 20 C.F.R. § 416.930a(e)(2).

At steps 2 and 3, the ALJ used the PRT ratings that Plaintiff had severe mental impairments,[9] but did not have an impairment or combination of impairments that met or equaled a listed impairment.  Tr. 26-27; *s*ee 20 C.F.R. § 416.920a(d)(1)-(2).  The ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment, as a result, the ALJ was required to assess Plaintiff's RFC.  Tr.  26.  The ALJ

---

[9]  The ALJ made findings regarding the four functional areas.  Tr. 27; *see supra* at 4.

found, as part of the RFC determination and, in relevant part, that

Plaintiff was limited to simple, routine, repetitive tasks performed in a

work environment free of fast-paced production requirements involving

only simple work-related decisions and routine workplace changes.

Tr. 28.  The ALJ also found that Plaintiff was further limited to only

occasional interaction with the public, occasional interaction with co-

workers, and occasional supervision.  *Id.*

As noted above, the opinions of Dr. Beaty and the opinions of the

State agency psychologists provide substantial evidence to support the

ALJ's assessment of Plaintiff's mental limitations.  Tr. 29-30, 72-74, 84-

86, 360-62.

Notwithstanding, the vocational expert testified that Plaintiff's past

relevant work is classified in the DOT as heavy exertion and unskilled with

an SVP rating of 2.  *See supra* at n.2.  The hypothetical question posed to

the vocational expert mirrored the ALJ's RFC determination.[10]  Tr. 28, 61-

---

[10]  The vocational expert was asked to assume the following facts:

> Please assume an individual the same age, education and work experience as the claimant.  This individual would have the following limitations[:] no exertional limitations, can perform work at all exertional level; however, must avoid even moderate use of moving machinery and must avoid even moderate exposure to unprotected heights.

> Also work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple, work-related decisions and routine workplace changes; also limited to

62. Based on this hypothetical question, the vocational expert opined: "The individual with these limitations is able to perform the past work of building maintenance both as typically performed and as performed by the claimant." Tr. 62.

Contrary to Plaintiff's arguments, the ALJ's RFC findings and the hypothetical question posed to the vocational expert sufficiently accounted for his PRT ratings because the record, as discussed by the ALJ, supports the ALJ's assessment of Plaintiff's mental limitations.[11]  Tr. 20-31; *see* SSR

---

only occasional interaction with the public and only occasional interaction with co-workers and limited to only occasional supervision.

> Oh, I'm sorry.  Those are the only limitations.  With those limitations would such a hypothetical individual be capable of performing the claimant's past -- I'm sorry, I said must avoid even moderate.  That should have been must avoid concentrated use of moving machinery and avoid concentrated exposure to unprotected heights.  So with those limitations would the hypothetical individual be capable of performing the claimant's past work?

Tr. 61-62.  The vocational expert opined that "[t]he individual with these limitation is able to perform the past work of building maintenance both as typically performed and as performed by" Plaintiff and, in addition, is able to perform other jobs in the national economy.  Tr. 62-63.  The vocational expert also explained customary employer tolerances regarding an employee being late to work and having unscheduled absences.  Tr. 63-64.  The vocational expert stated that his testimony was consistent with and in accordance with the DOT.  Tr. 64.

[11]  The RFC determination includes more limitations than merely limiting Plaintiff to simple, routine work, or unskilled work.  Tr. 28; *see, e.g.,* Tenaglia v. Berryhill, No. 16-11796-GAO, 2017 U.S. Dist. LEXIS 161613, at *13-14 (D. Mass. Sept. 28, 2017).  Rather, Plaintiff's *"work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work[-]related decisions and routine workplace changes.  The claimant is further limited to only occasional interaction with the public, occasional interaction with co-workers, and occasional supervision."* Tr. 28 (emphasis added).  Tr. 61-62 (vocational expert hypothetical); *see also supra* at nn.9-10.  In reaching this determination, the ALJ relied,

96-8p, 1996 SSR LEXIS 5 (July 2, 1996); <u>Winschel v. Comm'r of Soc. Sec.</u>,

631 F.3d 1176, 1180-81 (11th Cir. 2011).

H.

In the alternative, the ALJ asked the vocational expert whether there

were jobs in the national economy that Plaintiff can also perform. Tr. 31,

62-64; *see supra* at n.10.

In determining whether a successful adjustment to other work can be

made, the ALJ considered Plaintiff's RFC and other criteria in conjunction

with the Medical-Vocational Guidelines (the Grids). Tr. 31. Plaintiff's ability

to perform work at all exertional levels has been compromised by non-

exertional limitations. *Id.* To determine the extent to which these

limitations erode the occupational base of unskilled work at all exertional

levels, the ALJ asked the vocational expert whether jobs exist in the

national economy for an individual with Plaintiff's criteria. Tr. 61-62. The

vocational expert testified that given these factors, such an individual, here

---

in part, on the opinions of two State agency psychologists who opined that Plaintiff had
moderate difficulties in maintaining concentration, persistence, or pace. *Id.* Dr.
Levasseur noted that there would be "[s]ome disruption of CPP from a longitudinal
perspective" and Plaintiff had other moderate limitations. Tr. 73-74. He further
explained: "able to produce concentrated effort needed to complete tasks with adequate
persistence, pace and reliability despite some occasional disruption as indicated" and
"able to adapt to the demands of an informal work environment." Tr. 74. Plaintiff was
limited to unskilled work. *Id.* Dr. Anderton reached similar conclusions. Tr. 85-87.
Both psychologists determined Plaintiff was not disabled. Tr. 75, 87.

Plaintiff, would be able to perform the requirements of several representative jobs.  Tr. 62-63; *see supra* at 5-6 and nn.10-11.

Plaintiff has only non-exertional limitations and, as a result, section 204.00 of the Grids provides a framework for decision making. Tr. 31*.*  Based on the testimony of the vocational expert and the criteria examined, the ALJ determined that a finding of "not disabled" is appropriate under section 204.00.  *Id.*  No error has been shown.

I.

Plaintiff did not prove that the ALJ improperly evaluated the opinion evidence.  The ALJ stated with particularity the weight he gave the opinions of the medical sources and non-medical sources and the reasons for doing so.  *See* Sharfarz v. Brown, 825 F.2d to 278, 279 (11th Cir. 1987).  The ALJ also considered their opinions in accordance with the requirements of 20 C.F.R. § 416.927.  It has been held that good cause exists for discounting opinions when the opinions, as here, are inconsistent with the evidence in the record.  *See* Phillips, 357 F.3d at 1241.

Plaintiff has not demonstrated that the ALJ overlooked material evidence, mischaracterized the evidence, or improperly evaluated the medical opinion evidence in this record.  Also, substantial evidence supports the ALJ's RFC determination and conclusion that Plaintiff can

perform prior work and, in the alternative, other work in the national
economy.

Finally, the law defines disability as the inability to do any substantial
gainful activity because of any medically determinable physical or mental
impairment which can be expected to result in death or which has lasted or
can be expected to last for a continuous period of not less than twelve
months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 416.905(a),
416.909.  The impairment must be severe, making the claimant unable to
do his or her previous work, or any other substantial gainful activity which
exists in the national economy.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R.
§§ 416.905-.911. Although Plaintiff has had challenges and difficulties, the
only issue before the Court is whether the decision by the Commissioner
that Plaintiff did not meet this standard is adequately supported by the
evidence and was made in accordance with proper legal standards.  As the
Court finds that to be the case, it is recommended that the decision be
affirmed.  No error has been shown.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based
upon substantial evidence in the record and the ALJ correctly applied the

law.  Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits be

**AFFIRMED** and judgment entered for Defendant.

      **IN CHAMBERS** at Tallahassee, Florida, on January 2, 2018.

                **s/ Charles A. Stampelos**      
                **CHARLES A. STAMPELOS**
                **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**